WILLIAM C. HENDRICKSON, DEFENDANT IN ERROR, v. PHILADELPHIA AND READING RAILWAY COMPANY, PLAINTIFF IN ERROR.

Submitted December 9, 1902—Decided March 2, 1903.

1. By section 32 of the General Railroad act, an absolute liability is imposed on a corporation organized thereunder for all damages to animals coming on its tracks by reason of a failure to erect such a fence as is thereby required. After such a fence has been erected it will be liable for failure to maintain the fence, when the failure is attributable to a neglect of duty in that regard.

2. The duty to maintain such a fence involves the duty of reasonable inspection and observation to discover the need of reparation. The duty of inspection, its frequency, &c., must depend upon circumstances. Proof of a recent break, of which the company had no actual notice, and which such inspection as reasonable care would have required would not have disclosed, might fail to establish a case for a jury.

3. But where the company permits the land adjoining the fence to be used in the conduct of its business in a mode which imperils the fence, it is a question for a jury whether the duty of inspection does not require more frequent and particular observation, adapted to disclose any break happening from such use.

On error to the Supreme Court.

For the plaintiff in error, *James J. Bergen*.

For the defendant in error, *Dungan & Reger*.

The opinion of the court was delivered by

MAGIE, CHANCELLOR. This is an action to recover compensation for a mare, belonging to the plaintiff, which was killed by a train of the defendant company, running on the railroad tracks leased by it of the Delaware and Bound Brook Railroad Company.

The declaration charged the defendant with negligence in the performance of the duty of erecting and maintaining a fence along the plaintiff's field adjoining the railroad operated

by the defendant, whereby the mare escaped from the field and went on the railroad tracks and was there killed. The plea was the general issue.

The bill of exceptions discloses that counsel of defendant admitted at the trial that the Delaware and Bound Brook Railroad Company was organized under the "Act to authorize the formation of railroad corporations and regulate the same," approved April 2d, 1873. *Gen. Stat., p.* 2638. By section 32 of that act a liability is imposed on corporations organized thereunder in language which, so far as is important in this case, is as follows: "That every corporation formed under this act shall erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law; * * * until such fences * * * shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses or other animals thereon; and after such fences * * * shall be duly made and maintained, the corporation shall not be liable for any such damages unless negligently or willfully done."

The language used to express the legislative intent in this enactment is perhaps, not very happily chosen, but the intent, I think, can be discovered. In the first place, a positive duty is imposed on the railroad corporations organized under the act, not only to erect, but also to maintain fences along their tracks, of a specified height and strength. In the next place, the liability of a corporation which does not perform the duty of erection is an absolute one, and is for all damages done to animals on its road by it, the liability being impliedly restricted to injuries to animals which come upon the track by reason of the failure to erect the required fences. The language which follows, viz., "and after such fences * * * shall be duly made and maintained, the corporation shall not be liable for any such damages unless negligently or willfully done," may be construed to limit the company's liability for damages, when it has, not only erected, but has properly maintained fences of the required height and strength, to those done willfully or negligently. But this construction leaves

the enactment without any provision imposing a liability on the company for failing to maintain fences, except by an implication from the express imposition of that duty. Moreover, it has always been a question whether a railroad company owes any duty with respect to animals which have strayed upon its tracks, except to refrain from willfully injuring them. *Case* v. *Central Railroad Co., 30 Vroom 471.* It can scarcely be conceived that it was the legislative purpose to deal with the company's negligence in respect to the running of its trains and other acts of that sort and impose liability therefor, and not include its negligence in maintaining the fences as required and impose a like liability therefor.

In my judgment, it is more reasonable to construe the section as regulating, by implication, the liability of the company in case of failure to maintain the fences as required, and imposing such liability only when it has been negligent in the performance of its duty in that regard. Such a construction is possible, and it seems to have been that given this enactment by Chief Justice Beasley, in *Van Duzer* v. *Lehigh and Hudson River Railroad Co., 29 Vroom 8.*

The issue was tried in the Circuit upon this construction of the section, and no contention was then made, and none has been made here, that challenges its correctness. But as the language of the act is peculiar, it has been deemed best to state our views in respect to its construction.

Nor has there been any contention but that the defendant company (which was shown to be the lessee of the Delaware and Bound Brook Railroad Company for a term of nine hundred and ninety-nine years) is liable for the obligations and duties imposed on its lessor by this legislation.

At the trial it was not contended that there had been any breach of the statutory duty in respect to the erection of the fence in question. It was apparently conceded that a post and rail fence of the required height and strength had been erected on the line where the land of the plaintiff and the track used by the defendant joined. The sole contention was that there had been a break in the fence, which it was the duty of the

defendant to repair, and that it had failed in the performance of that duty.

The duty to make reparation of such a fence will arise upon notice to the company that the reparation is necessary. There is also involved and included a duty of such inspection and observation as prudence requires to ascertain when such reparation is necessary. When the break is very recent, and the railroad has no actual notice thereof, and such inspection and observation as prudence required would not have disclosed it, the question of negligence may, at times, be a question of law, to be disposed of by a compulsory nonsuit. But when the proofs show that the break was not recent, or, although recent, that it would have been discovered by such inspection and observation as were required under the circumstances, it must be a question for a jury whether the company's duty in that respect has been performed.

The assignment of error in this case is confined to the ruling of the trial judge in refusing a compulsory nonsuit at the trial, and it is here contended that the plaintiff's case disclosed no evidence of negligence proper to be submitted to a jury.

The circumstances upon which the trial judge was required to act were these: The fence in question had been erected parallel to, and twenty-nine feet distant from, the north rail of a spur or siding maintained and used by the defendant. Upon this siding the company was accustomed to place freight cars, with freight of various sorts, consigned to persons in that neighborhood. The siding was parallel with the main tracks of the railroad, and so near the north track that consignees could not approach and take their freight from the cars on that side. It was therefore the custom for the consignees to approach the cars on the north side, in the space of twenty-nine feet between the north rail and the fence, which space was diminished, when the siding was occupied by freight cars, by the ordinary overhang of the cars, which was about two feet and three inches. From the evidence the jury could infer that, from the configuration of the ground and various obstacles thereon, the farm wagons employed in carting such

freight from the cars could not drive through without turning, but were compelled to turn in the space thus left. It appeared that such farm wagons measure a little over twenty-three feet from the rear end to the end of the pole. It could therefore be fairly inferred that, in turning such a wagon within the space left, there was obvious danger that it might impinge upon and break down the fence. There was proof that marks appeared on some of the rails at the break in the fence which might have been made by the wheel of a wagon striking them.

The evidence of plaintiff further disclosed that the fence in question was intact and unbroken on the morning of a certain day. Later, on the same morning, and again in the afternoon of the same day, it was observed to have been broken down. This observation was made by several persons engaged in taking freight from the cars that were then standing on the siding. One of the posts had been split in two, and one part lay on the ground in the field. The other part remained standing, but the rails, or some of them, had been released, and the ends of them, or some of them, had fallen to the ground in the field, so as to leave a break through which it was practicable for animals to pass. In the evening of that day the horses of plaintiff were turned out to pasture, and had the range of several fields, one of which was the field adjoining the railroad track. It was a fair inference, from the circumstances, that the mare in question had escaped through the break in the fence, and had been run down by an engine passing upon one of the tracks used by the defendant, where her body was found the next morning.

Upon these circumstances there was, in my judgment, a plain question for the jury, and it would have been erroneous to have withdrawn it from them. It is true that the break in the fence was recent, and there was no evidence of actual notice of it given to any agent of defendant. It was so recent that, if it had occurred elsewhere and under ordinary circumstances, a question would have arisen whether the company could have been charged with knowledge of it, or with neglect because it did not discover it. But in view of the use of the

land adjoining the fence permitted by the defendant company to be made by its licensees in the conduct of the company's business, and the obvious risk of injury to the fence by such use, it was a question whether reasonable prudence did not require the company to inspect and observe the fence during, or at least directly after, such use. That question was not for the court, but was a question for the jury. It was for the jury to say whether or not, when the company, by the mode it used the land adjoining the fence, or permitted it to be used, put the fence in peril, it was not bound to take such precaution as would disclose a break thus made which required reparation.

After the nonsuit had been refused defendant proved that it employed a track walker to pass over the railroad along this locality twice a day, and that it was a part of his duty to observe the fences along the line. The man thus employed testified that he passed this locality twice on the day in question and observed no break in the fence. But it appeared by his examination that he passed down upon one track and returned on the other track, and that the break might have been obscured from his observation by the freight cars on the siding, and would not have been seen by him unless he had left the track, which he did not do.

This evidence did not cure the previous defect, because, assuming its truth, it was obviously a question for the jury whether his inspection was such as it was the duty of the company to make under the circumstances that appeared.

The trial judge committed no error in refusing to nonsuit the plaintiff, and the Supreme Court rightly affirmed the judgment of the Circuit.

The judgment of the Supreme Court must therefore be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, FORT, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 9.

*For reversal*—None.